## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| KHADIJAH ABUBAKARI and ANAS ABUBAKARI, | No. 3:19-cv-00510 |
| *Plaintiffs*, | |
| v. | |
| ELIZABETH SCHENKER in her individual capacity, | |
| *Defendant*. | |

### RULING ON MOTION TO DISMISS

Plaintiffs Khadijah Abubakari and Anas Abubakari ("Plaintiffs" or the "Abubakaris") bring this action under 42 U.S.C. § 1983 on behalf of themselves and their minor child, U.A., against Defendant Elizabeth Schenker ("Schenker"), alleging First and Fourteenth amendment violations and intentional infliction of emotional distress based on Schenker's alleged knowing and malicious filing of a false complaint against the Abubakaris with the Connecticut Department of Children and Families. ECF No. 37. Schenker filed a partial motion to dismiss, seeking to dismiss Count One (violation of the First and Fourteenth Amendments) for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). ECF No. 38. For the reasons set forth below, Schenker's motion to dismiss is DENIED.

### I.    BACKGROUND

The following facts are drawn from the Abubakaris' amended complaint and are accepted as true for the purpose of this ruling.

The Abubakaris are adult residents of Hamden, Connecticut. ECF No. 37 ¶ 1. They are the parents of U.A., a minor child. *Id.* Elizabeth Schenker was, at all times mentioned in the

1

Complaint, a social worker employed by the Hamden Board of Education and was acting in her capacity as such. *Id.* ¶ 2.[1]

During the 2016-2017 school year, U.A. was enrolled in Hamden Elementary School (the "School"). *Id.* ¶ 5.  At a meeting of the School's Pupil Planning Team ("PPT"), U.A. was identified as a student requiring special education under federal law, that is, the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.*, and an individual education plan ("IEP") was put in place for U.A.  ECF No. 37 ¶ 5.  The PPT also determined that U.A. would be provided special education services, including a "one-to-one paraprofessional to assist [U.A.] with his learning disabilities so that he would be able to transition into the Hamden Middle School and continue to succeed there." *Id.*

During the 2017-2018 school year, U.A. was enrolled in the Hamden Middle School. *Id.* ¶ 6.  During a PPT meeting in June 2017, School officials changed U.A.'s IEP to, among other things, eliminate the one-to-one paraprofessional. *Id.* ¶ 7.  As a result of the changes, U.A.'s educational progress "regressed", but School officials continued to "socially advance him" through his grade. *Id.* ¶ 8.  As a result of U.A.'s regression, the Abubakaris requested reinstatement of the one-to-one paraprofessional and other special education services and accommodations "to reverse the regression and enable U.A. to successfully perform in the middle school." *Id.* ¶ 9.  School officials denied the Abubakaris' request, and, at a PPT meeting on February 13, 2018, Khadijah Abubakari "expressly announced that she would pull U.A. out of his enrollment in the Hamden Public Schools and continue to keep him out until the school district provided him with the special education services and accommodations she believed necessary to allow him to progress successfully." *Id.* ¶¶ 10-11.  Khadijah Abubakari further

---

[1] The complaint makes clear that Schenker is sued only in her individual capacity. ECF No. 37 ¶ 2.

"announced explicitly and on the record that beginning immediately she would be home-schooling U.A., as is specifically provided and permitted by Section 10-184 of the Connecticut General Statutes." *Id.* ¶ 12.

On March 22, 2018, Schenker, with "actual knowledge" of Khadijah Abubakari's February 13, 2018 announcements, "knowingly and maliciously filed a false complaint with the Connecticut Department of Children and Families [("DCF")] claiming that the [Abubakaris] were educationally neglecting U.A." because (1) U.A. "has not been in school since February 13, 2018" and (2) the Abubakaris "ha[ve] not engaged in communication with the school" and "ha[ve] been difficult to work with at IEP [meetings]", the last of which had occurred on February 13, 2018. *Id.* ¶¶ 13-14.  In filing the complaint with DCF, Schenker "concealed the fact that she had actual knowledge that the [Abubakaris] were home-schooling their child in compliance with the provisions of Connecticut law." *Id.*  Schenker also "knew, and intended," that as a result of her malicious actions, DCF "would initiate child neglect proceedings against the [Abubakaris], would require them to appear in court, and would attempt to remove U.A. from their custody and place him in foster care." *Id.* ¶ 15.  Schenker "knew, and intended, that both [the Abubakaris] and U.A. would suffer severe emotional distress as a result of her actions and that the [Abubakaris] would be forced to incur substantial expenses to obtain counsel and attempt to save themselves and their child from her vicious attack." *Id.*

In 2018, DCF did "launch an invasive investigation of the [Abubakaris] and their child and did file a Petition for neglect against them in the Connecticut Superior Court." *Id.* ¶ 16.  As a result, the Abubakaris "were subjected to a child neglect prosecution in the Superior Court, were required to hire an attorney at substantial expense, were required to appear in court to defend themselves, and suffered great and prolonged fear, anguish, sleeplessness, loss of

appetite, and other aspects of severe emotional distress." *Id.* ¶ 17.  On October 17, 2018, DCF withdrew their Petition for Neglect because the Abubakaris' attorney "was able to prove the malicious falsity of [Schenker's] accusations . . . ." *Id.* ¶ 18.

The Abubakaris assert two claims for relief.  First, because of Schenker's allegedly false complaint filed with DCF, Count One alleges that "the [Abubakaris] were subjected to invasion of their relationship with their minor child [U.A.] and were deprived of substantive due process of law, all in violation of the First and Fourteenth Amendments to the United States Constitution as enforced through Sections 1983 and 1988 of Title 42 of the United States Code."  ECF No. 37 ¶ 19.  Count Two alleges intentional infliction of emotional distress by Schenker based on the same alleged conduct.  *Id.* at 5 ¶ 2.

## II.    LEGAL STANDARD

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and "must draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).  However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss.  *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014).

III.    **DISCUSSION**

Schenker asks the Court to dismiss Count One of the operative complaint because the
Abubakaris: (1) have not complied with this Court's order (ECF No. 36) requiring them to file an
amended complaint that asserts distinct claims under the First and Fourteenth Amendments, ECF
No. 38-1 at 5-7; and (2) have, in any case, failed to state a claim under either the First or
Fourteenth Amendment because they have "failed to plead sufficient facts from which it can be
determined the federal or constitutional right alleged to have been violated," *id.* at 8.  In
response, the Abubakaris argue that the motion to dismiss should be denied because (1) they
complied with the Court's order as to pleading distinct legal theories in the amended complaint,
and (2) the "right of intimate familial association . . . is one which most courts believe lies in the
interface between the First Amendment's right of association and the Fourteenth Amendment's
right to substantive due process of law . . . ."  ECF No. 41 at 1, 12.  For the reasons discussed
below, I find that (1) the Abubakaris complied adequately with the Court's order as to pleading,
and (2) they have pled sufficient facts to state a section 1983 claim alleging violations of the
First and Fourteenth Amendments.  Schenker's motion to dismiss therefore must be denied.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) "some person has
deprived him of a federal right" and (2) "the person who has deprived him of that right acted
under color of state or territorial law."  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  As noted
above, Schenker contends that the Abubakaris have failed to state a claim for relief under either
the First Amendment or the Fourteenth Amendment, and as such, the complaint fails to meet the
first prong of a section 1983 claim.  ECF No. 38-1 at 7-8.  The Abubakaris allege, and Schenker
does not contest, that Schenker was acting under color of state law at all times mentioned in the
complaint.  As a result, the only issue before me is whether the amended complaint alleges the
deprivation of a federal right.

**A.      The Abubakaris Complied with the Order to File an Amended Complaint.**

As to the Abubakaris' compliance with the order directing them to file an amended complaint, Schenker argues that "[b]y combining two separate causes of action into one count, the plaintiffs have failed to provide a clear statement of the law entitling them to relief and the factual support needed to support such a claim and have ignored this court's clear directive." ECF No. 38-1 at 7.  But while my order noted that some of the claims in the original complaint did "not clearly set forth a distinct legal theory, as separate counts of a well-drafted complaint should," and that "it would be consistent with Rule 1 and the interests of justice to give counsel an opportunity to replead these claims, . . . with an eye to making the claims distinct and coherent," ECF No. 36, it did not bar counsel from pleading two legal theories in the same count. Nor could it have, as Rule 8, which governs pleading in federal court, includes no such bar.  To the contrary, it adopts a flexible view of proper pleading, permitting a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones," noting that "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient," and providing that "[p]leadings must be construed so as to do justice."  Fed. R. Civ. P. 8(d)(2), (e).  In any event, as shown below, uncertainty in the law about the source of the right at issue in this case makes it reasonable to plead a violation of that right under both the First and Fourteenth Amendments.

**B.      Count One States a First Amendment Retaliation Claim.**

Schenker argues that, "[t]o the extent the [Abubakaris] are reasserting that [Schenker's] actions in this matter impacted on their right to 'free speech' or redress of grievances, or constituted an act of retaliation in response to the exercise of these rights, [they] have failed to

state sufficient facts to support any such claims." ECF No. 38-1 at 9.  Schenker also incorporates the arguments made as to a First Amendment claim from her prior memorandum. ECF No. 27-1.

Courts in the Second Circuit have recognized a right of "intimate association" among family members, but as the Court of Appeals observed in *Adler v. Pataki*, "the source of the intimate association right has not been authoritatively determined," and may be grounded in either the First or Fourteenth Amendments depending on the specific context.  185 F.3d 35, 42 (2d Cir. 1999) (citing U.S. Supreme Court cases that ground the right of intimate association in the due process clause of the Fourteenth Amendment (as a either a liberty or privacy right), the First Amendment, or that discuss such a right without grounding it in any specific amendment). The *Adler* Court went on to observe that, in the context of analyzing claims alleging burdens on marital relationships (one of a number of intimate associations protected by either the First or Fourteenth Amendment), the constitutional grounding of a claim tended to turn on whether a broad regulation or a specific adverse action was being challenged.  *Id.* at 43.  While "[c]hallenges to broad regulatory measures . . . tend to be considered claims of unlawful classifications and are tested against the Equal Protection Clause, once a court has asserted that the right to marry is a fundamental right protected by the Due Process Clause[,]" *id.*, "claims that some adverse state action burdens an individual's marital relationship have been assessed under a First Amendment doctrine of intimate marital association[,]" *id.*

Courts in the Second Circuit have found that the First Amendment right to intimate association is infringed "[w]here a plaintiff is allegedly retaliated against for the First Amendment activities of a family member . . . ." *Agostino v. Simpson,* 08-CV-5760 (CS), 2008 WL 4906140, at *9 (S.D.N.Y. Nov. 17, 2008); *see also Adler*, 185 F.3d at 44 ("Though the matter is not free from doubt, we think a spouse's claim that adverse action was taken solely

against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association."); *Sutton v. Village of Valley Stream*, 96 F. Supp. 2d 189, 192-93 (E.D.N.Y. 2000) (holding that plaintiff had stated a claim for violation of his First Amendment right to intimate association where he alleged that his local government employer harassed him in retaliation for his father's political activities because such action was alleged to have "unconstitutionally intruded upon Plaintiff's relationship with his father"). "To state a First Amendment retaliation claim, a plaintiff must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech [or conduct]." *Puglisi v. Town of Hempstead, Dep't of Sanitation, Sanitary Dist. No. 2*, 545 Fed. Appx. 23, 26 (2d Cir. 2013) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011). For the purpose of a First Amendment retaliation claim, an "adverse action" is "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Cox*, 654 F.3d at 273 (internal quotations mark omitted).

The intimate association cases discussed above are factually distinguishable from the case at hand in that the allegations here suggest that Schenker retaliated against the Abubakaris for their own activity, rather than the activity of their family member (i.e., U.A.). Specifically, the operative complaint alleges that the Abubakaris took U.A. out of school to be homeschooled and explicitly stated their intent to do so such that Schenker had actual knowledge of U.A.'s removal from school for that purpose. ECF No. 37. ¶¶ 11-14. About five weeks later, Schenker allegedly lied to the DCF, claiming that the Abubakaris were "educationally neglecting" U.A. and had "not engaged in communication with the school," all the while "conceal[ing] the fact

that [Schenker] had actual knowledge that the plaintiffs were home-schooling their child in compliance with the provisions of Connecticut law." *Id.* These facts do not suggest that the Abubakaris were retaliated against due to the activities of a family member.

Nonetheless, these facts do suggest a more straightforward theory of free speech retaliation: The Abubakaris requested reinstatement of the one-to-one paraprofessional, their request was denied, and in the February 13, 2018 PPT meeting, Ms. Abuabakari announced she would pull U.A. out of public school and begin homeschooling him "until the school district provided [U.A.] with the special education services and accommodations she believed necessary to allow him to progress successfully"; only five weeks later Schenker lied about the Abubakaris to the DCF, knowing this could lead to DCF's taking action aimed at separating them from their child. ECF No. 37 ¶¶ 11-15. I construe these facts to allege—and Schenker does not contest— that Ms. Abubakari's speech at the February 13, 2018 PPT meeting is protected by the First Amendment, satisfying the first prong of a First Amendment retaliation claim. The second prong is satisfied because the Abubakaris' allegations suggest that the adverse action—Schenker's knowingly filing a false complaint with DCF, thus causing DCF to initiate child neglect proceedings against the Abubakaris—was done by Schenker with the intent to punish their exercise of the right to free speech. In addition, Schenker's alleged conduct is precisely the kind that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Cox*, 654 F.3d at 273 (internal quotations mark omitted); *see also Manon v. Pons*, 131 F. Supp. 3d 219, 232 (S.D.N.Y. 2015) (noting that "adverse actions" for the purpose of a First Amendment retaliation claim in the employment context have included "harsh measures, such as discharge, refusal to hire, refusal to promote, reduction in pay, and reprimand, as well as some lesser sanctions, such as failure to process a teacher's insurance form, demotion,

reassignment to a place that aggravated physical disabilities, and express accusations of lying. Although it would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise, context matters, as some actions may take on more or less significance depending on the context." (internal quotation marks and citations omitted)). Lastly, the third prong is satisfied because, while the complaint does not use the word "retaliate", it does allege a clear causal connection—when all reasonable inferences are drawn in the Plaintiffs' favor—between Khadijah Abubakari's announcement at the February 13, 2018 meeting that the Abubakaris would be homeschooling U.A. until adequate accommodations were provided at the School and her subsequent conduct of homeschooling him, on the one hand, and Schenker's decision five weeks later to file the allegedly false DCF claim on the other.  ECF No. 37 ¶¶ 11-15; *see Nagle v. Marron*, 663 F.3d 100, 110 (2d Cir. 2011) ("A 'plaintiff can . . . establish a causal connection to support a . . . retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [] action.'").  Because these allegations are adequate to plead a free speech retaliation claim under the First Amendment, I need not decide whether to extend Second Circuit First Amendment "intimate association" case law to the facts alleged in the complaint.  Count One adequately pleads a claim under the First Amendment.

     **C.**     **Count One States a Fourteenth Amendment Substantive Due Process Claim.**

     Schenker also argues that the complaint fails to state a claim under the Fourteenth Amendment.  ECF No. 38-1 at 7-8.  She supports that argument by stating that "[a]s ple[d] . . . there is no claim of a violation of the parents' alleged liberty interest in their son's education, as

this interest is held jointly by both parent and the State, both of whom continued to play a legal role in the student's education." *Id.* at 11.

As Schenker acknowledges, parents have a constitutionally protected right in the care, custody, and management of their children. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000); *see also Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977) (recognizing the right of the family "to remain together without the coercive interference of the awesome power of the state"). The Second Circuit has cautioned against a "formalistic vision of how severe the impairment to the right of intimate association must be" in light of the Supreme Court's "statement that constitutional protections for associational interests are at their apogee when close family relationships are at issue." *Patel v. Searles*, 305 F.3d 130, 137 (2d Cir. 2002) (discussing *Roberts v. United States Jaycees*, 468 U.S. 609, 619-20 (1984)). Moreover, "[c]hoices about marriage, family life, and the upbringing of children are among associational rights [the Supreme] Court has ranked as of basic importance in our society, rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996) (internal quotation marks and citation omitted).

The Abubakaris allege that Schenker deprived them of substantive due process and invaded their relationship with their child by filing a false child neglect complaint against them. ECF No. 37 ¶ 19. The Abubakaris' complaint alleges that Schenker "knew, and intended, that the result of her . . . actions would be that [DCF] would . . . attempt to remove U.A. from [the Abubakaris'] custody and place him in foster care." ECF No. 37 ¶ 15. Moreover, the complaint alleges that the Abubakaris suffered "severe emotional distress" and "great and prolonged fear, anguish, sleeplessness, loss of appetite, and other aspects of severe emotional distress." *Id.* ¶¶ 15, 17. The Abubakaris also allege that Schenker's conduct forced them to incur "substantial

expenses" to defend themselves and their child against the false DCF complaint that could result in the removal of U.A. from their home and his placement in foster care. *Id.* Lastly, the complaint alleges that DCF "launch[ed] an invasive investigation" of the Abubakaris and their child that, when taken together with the previous allegations, resulted in an unconstitutional "invasion of their relationship with their minor child". *Id.* ¶¶ 16, 19. At the pleadings stage, these allegations are sufficient to state a claim of deprivation of substantive due process for violating the Abubakaris' right of intimate association with their son. *See Patel*, 305 F.3d at 136 (noting that Supreme Court had "cited a number of substantive due process cases" in describing the "freedom of intimate association" as "a fundamental element of personal liberty." (citing *Roberts*, 468 U.S. at 617-18)). Whether the State of Connecticut has rights that must be balanced against those of the Abubakaris, as Schenker argues, is immaterial at this stage of the case. Even if Schenker is correct, that kind of balancing consideration is not appropriately assessed on a Rule 12(b)(6) motion to dismiss because it requires making determinations as to material facts that are disputed by the parties. Thus, the Abubakaris have alleged sufficient facts to state a section 1983 claim based on a violation of the Fourteenth Amendment's right of substantive due process and Schenker's motion to dismiss must be denied on this basis.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, ECF No. 38, is hereby DENIED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                April 26, 2021