## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| KHADIJAH ABUBAKARI and ANAS ABUBAKARI,<br>     *Plaintiffs*,<br><br>v.<br><br>ELIZABETH SCHENKER,<br>     *Defendant.* | No. 3:19-cv-510 (MPS) |

## RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiffs Khadijah and Anas Abubakari (the "Abubakaris") filed suit under 42 U.S.C. § 1983 on behalf of themselves and their minor child, U.A., against Defendant Elizabeth Schenker, alleging First and Fourteenth Amendment violations and intentional infliction of emotional distress based on Schenker's alleged knowing and malicious filing of a false complaint against them with the Connecticut Department of Children and Families ("DCF"). ECF No. 37. Schenker moves for summary judgment on all claims. For the reasons set forth below, I grant Ms. Schenker's motion as to the First and Fourteenth Amendment claims (Count 1), and I decline to exercise supplemental jurisdiction over the intentional infliction of emotional distress claim (Count 2).

### I.      Factual Background

The following facts, which are taken from the parties' Local Rule 56(a) statements and supporting exhibits, are undisputed unless otherwise indicated.

The Abubakaris moved to Hamden in 2016 and enrolled U.A. in Hamden Public Schools the same year. ECF No. 43-2 at ¶ 3; ECF No. 46-1 at Section A, ¶ 3. U.A. was enrolled in Hamden Public Schools during the 2016-2017 and 2017-2018 school years; during the 2017-

2018 school year, he was in seventh grade at Hamden Middle School (the "School").  ECF No. 43-2 at ¶¶ 5, 7; ECF No. 46-1 at Section A, ¶¶ 5, 7.  U.A. was identified as a student requiring special education services, and he had an individualized education plan ("IEP").  ECF No. 43-2 at ¶ 6; ECF No. 46-1 at Section A, ¶ 6.  As part of his IEP, U.A. received services with the School's social worker, Schenker.  ECF No. 43-2 at ¶¶ 8-9; ECF No. 46-1 at Section A, ¶¶ 8-9.

At the start of seventh grade in September 2017, a meeting of the School's Pupil Planning Team ("PPT") was held at the Abubakaris' request to discuss the special education services U.A. was receiving.  ECF No. 43-2 at ¶ 11; ECF No. 46-1 at Section A, ¶ 11.  At that meeting, Ms. Abubakari expressed concerns about U.A.'s transition to middle school and overall academic functioning, and she requested information concerning outplacement at another school.  ECF No. 43-2 at ¶ 12; ECF No. 46-1 at Section A, ¶ 12.  The Abubakaris sought modification of U.A.'s special education services because U.A. was performing below grade level in reading and other areas.  ECF No. 43-2 at ¶ 13; ECF No. 46-1 at Section A, ¶ 13.  At the meeting, the School team suggested changes to U.A.'s services that would enable him to "have access to supports throughout all his core classes."  ECF No. 43-2 at ¶ 17; ECF No. 46-1 at Section A, ¶ 17.

As of October 2017, Ms. Abubakari believed that U.A.'s math skills were "up to par" but was concerned that he was not writing at all, and she requested a meeting to discuss concerns with his math placement and overall program.  ECF No. 43-2 at ¶¶ 18-19; ECF No. 46-1 at Section A, ¶¶ 18-19.  That meeting was conducted on December 18, 2017.  *Id.*  During this PPT meeting, the School staff described U.A.'s progress in math and English.  ECF No. 43-2 at ¶¶ 20-21; ECF No. 46-1 at Section A, ¶¶ 20-21.  Ms. Abubakari stated that she wanted U.A. to be returned to fifth grade so that he would be enrolled in the grade level at which he was reading, but School staff explained that students were not permitted to go back in grade levels and that

U.A.'s IEP goals were designed to address his needs.  ECF No. 43-2 at ¶ 22; ECF No. 46-1 at Section A, ¶ 22.  Ms. Abubakari then refused to discuss U.A.'s academic program further and walked out of the meeting, "stating she 'want[ed] him out' and w[ould] be 'going to the Capitol.'"  ECF No. 43-2 at ¶ 23; ECF No. 46-1 at Section A, ¶ 23.

The PPT team met with the Abubakaris again on February 13, 2018 for U.A.'s annual review as well as at the Abubakaris' request.  ECF No. 43-2 at ¶ 24; ECF No. 46-1 at Section A, ¶ 24.  According to Ms. Abubakari, she requested the meeting at the suggestion of the Hamden Superintendent of Schools, who agreed that U.A. should have been writing.  ECF No. 46-1 at Section B, ¶ 1.  The Abubakaris attended the meeting, as did Schenker and other School employees, including U.A.'s teachers, representatives from pupil services, and the vice principal. ECF No. 43-2 at ¶ 26; ECF No. 46-1 at Section A, ¶ 26.  Going into the meeting, Ms. Abubakari did not intend to "pull her son from Hamden Public Schools"; rather, she attended the meeting in hopes of getting him different or additional services, including a paraprofessional and help with his writing skills.  ECF No. 43-2 at ¶¶ 27-28; ECF No. 46-1 at Section A, ¶¶ 27-28.

During the meeting, School staff reported on U.A.'s progress, discussed areas in which more work was needed, and made recommendations for his education during the following academic year.  ECF No. 43-2 at ¶ 29; ECF No. 46-1 at Section A, ¶ 29.  The Abubakaris expressed disagreement with the School's recommendations and shared their frustration that U.A. was not on grade level in some areas, including reading fluency and writing.  ECF No. 43-2 at ¶ 30; ECF No. 46-1 at Section A, ¶ 30.  According to Ms. Abubakari, she discovered at the meeting that the School did not intend to change U.A.'s IEP.  ECF No. 46-1 at Section B, ¶ 2.

Upon realizing that School staff would not discuss changes to the IEP, Ms. Abubakari stood up to leave and stated, "I'm going to homeschool my son and I will be taking him out of

your school system." ECF No. 43-2 at ¶ 33; ECF No. 46-1 at Section A, ¶ 33. According to Ms. Abubakari, she said nothing further after announcing that she was withdrawing U.A. and would be homeschooling him. ECF No. 46-1 at Section B, ¶ 4. She testified at her deposition that she felt that she "didn't have any alternative for him at that point" because the School was "going to start letting him skate through" even though he "could barely read, can't write, and he would have been sitting up in high school, can't read, can't write, can't do nothing." ECF No. 46-1 at Section B, ¶ 5; ECF No. 43-3 at 16.[1] She had not mentioned homeschooling U.A. before this meeting. ECF No. 43-2 at ¶ 36; ECF No. 46-1 at Section A, ¶ 36.

Immediately following the meeting, U.A. was brought down to the School's main office, the Abubakaris signed him out on the attendance sign-out sheet, and the family left the School. ECF No. 43-2 at ¶ 38; ECF No. 46-1 at Section A, ¶ 38. U.A. did not return to the School for the remainder of the academic year, except to clean out his locker. ECF No. 43-2 at ¶ 40; ECF No. 46-1 at Section A, ¶ 40 and Section B, ¶ 7. While in the main office signing out her son, Ms. Abubakari did not inform anyone present that she intended to homeschool. ECF No. 43-2 at ¶ 39; ECF No. 46-1 at Section A, ¶ 39. She did not go to the Superintendent's office following the meeting and before leaving the School. ECF No. 43-2 at ¶ 42; ECF No. 46-1 at Section A, ¶ 42. In addition, she did not communicate with Schenker about her plan to homeschool U.A. at any point after the February 13 meeting. ECF No. 43-2 at ¶ 43; ECF No. 46-1 at Section A, ¶ 43.

On March 22, 2018, Schenker made an oral report to DCF, which resulted in the filing of a written report of suspected child abuse or neglect against Ms. Abubakari. ECF No. 43-2 at ¶ 44; ECF No. 46-1 at Section A, ¶ 44; ECF No. 43-9. The section of the report regarding the "nature and extent of the injury, maltreatment or neglect" reads, "Educational Neglect—has not

---

[1] This ruling cites ECF page numbers throughout.

been in school since February 13," and the section regarding "circumstances under which the injury(ies), maltreatment or neglect came to be known" reads, "child is not in school."  ECF No. 43-2 at ¶¶ 45-46; ECF No. 46-1 at Section A, ¶¶ 45-46.  When asked to describe why she suspected Ms. Abubakari of educational neglect, Schenker reported, "[p]arent has not engaged in communication with school."  ECF No. 43-2 at ¶ 47; ECF No. 46-1 at Section A, ¶ 47.  She further reported: "[p]arent has been difficult to work with at IEP [meetings].  Last meeting was February 13 (child's last day of [line truncated]."  ECF No. 43-2 at ¶ 48; ECF No. 46-1 at Section A, ¶ 48.  The DCF report documenting the call with Schenker indicates that she stated that Ms. Abubakari "ha[d] not provided any reason for [U.A.]'s excessive absences" from school and "ha[d] not stated what her plans were regarding [U.A.]'s education . . . ."  ECF No. 46-2.

Around the time that Schenker made the DCF report, Ms. Abubakari received a phone call from a DCF case worker notifying her that DCF was investigating a claim of educational neglect of her child.  ECF No. 43-2 at ¶ 52; ECF No. 46-1 at Section A, ¶ 52.  Specifically, DCF informed her that the agency was investigating because she took her son out of the school system.  ECF No. 43-2 at ¶ 53; ECF No. 46-1 at Section A, ¶ 53.  Ms. Abubakari told the case worker that she was homeschooling U.A.  ECF No. 43-2 at ¶ 57; ECF No. 46-1 at Section A, ¶ 57.  At the time DCF contacted Ms. Abubakari, she, her husband, and her cousin were working with U.A. on writing, reading comprehension, math, and science; she was particularly focused on addressing the fact that U.A. was not writing.  ECF No. 43-2 at ¶¶ 54-56; ECF No. 46-1 at Section A, ¶¶ 54-56.  (Later, in June or July of 2018, the Abubakaris also signed U.A. up for tutoring services with Kumon.  ECF No. 43-2 at ¶ 70; ECF No. 46-1 at Section A, ¶ 70.)  Ms. Abubakari did not provide the case worker with any of the curriculum materials she was using with U.A.  ECF No. 43-2 at ¶ 58; ECF No. 46-1 at Section A, ¶ 58.  She did provide the worker

with a booklet containing all of U.A.'s IEPs from the past year up to and including the IEP from the February 13 meeting.  ECF No. 43-2 at ¶ 60; ECF No. 46-1 at Section A, ¶ 60.

DCF substantiated the complaint of educational neglect against Ms. Abubakari on April 27, 2018, and the agency filed a neglect petition against her on behalf of U.A. on May 8, 2018. ECF No. 43-2 at ¶¶ 61-62; ECF No. 46-1 at Section A, ¶¶ 61-62.  On May 23, 2018, while the DCF case was pending, Ms. Abubakari filed a "Notice of Intent for Home-Schooling" with the Hamden Public Schools, "acknowledg[ing] and accept[ing] full responsibility for the education of [U.A.] in accordance with the requirements of state law."  ECF No. 43-2 at ¶ 65; ECF No. 46-1 at Section A, ¶ 65.  Before filing this notice, she did not file any paperwork or documentation with Hamden Public Schools indicating that she was withdrawing U.A. from school.  ECF No. 43-2 at ¶¶ 63, 69; ECF No. 46-1 at Section A, ¶¶ 63, 69.  According to Ms. Abubakari, it was not necessary for her to do so because "Connecticut law states I can withdraw my son from the school system either verbal, written, or how I best fit.  I said it verbally.  [The School] wrote it on [their] document [apparently referring to the report of the February 13 meeting, ECF No. 43-7]." ECF No. 43-3 at 23.  Ms. Abubakari also testified that neither Schenker nor anyone else from the school system made any effort to contact her about her "plan to homeschool UA."  ECF No. 43-3 at 22.  The Superintendent acknowledged receipt of Ms. Abubakari's "Notice of Intent for Home-Schooling" on May 24 and wrote that the "Connecticut State Board of Education in accordance with Conn. Gen. Statute 10-184, acknowledges the right of parents to instruct their children at home as an alternative to public school attendance."  ECF No. 43-2 at ¶¶ 66-67; ECF No. 46-1 at Section A, ¶¶ 66-67.

During the course of the DCF case, Ms. Abubakari had to appear in court on a number of dates.  ECF No. 43-2 at ¶ 75; ECF No. 46-1 at Section A, ¶ 75.  The family also hired an attorney

to represent them in the DCF proceedings and "for the educational part of the situation."  ECF No. 43-2 at ¶ 64; ECF No. 46-1 at Section A, ¶ 64.[2]  Ms. Schenker was not present for any of the court dates.  ECF No. 43-2 at ¶¶ 76; ECF No. 46-1 at Section A, ¶¶ 76.  Ultimately, on October 17, 2018, DCF withdrew its neglect petition, ECF No. 43-2 at ¶ 77; ECF No. 46-1 at Section A, ¶¶ 77, and did not, according to Ms. Abubakari, have any contact with the family after that date.  ECF No. 43-3 at 34.  DCF closed its case against the Abubakaris on November 5, 2018.  ECF No. 46-1 at Section B, ¶ 16.  U.A. was not at any point during the course of the DCF case removed from the Abubakaris' custody.  ECF No. 43-2 at ¶ 78; ECF No. 46-1 at Section A, ¶ 78.

Mr. Abubakari testified at his deposition that he suffered "a little bit" of emotional distress, as well as financial distress and loss of energy, due to the DCF case.  ECF No. 43-4 at 14.  Ms. Abubakari testified that she experienced stress and also fear about what would happen in the DCF proceeding.  ECF No. 43-3 at 37.  Ms. Abubakari was diagnosed with Post-Traumatic Stress Disorder ("PTSD") approximately a decade prior to this incident, for which she received and successfully completed therapy; while her interaction with DCF was a "trigger" for her PTSD, she did not require therapy.  ECF No. 43-2 at ¶ 73; ECF No. 46-1 at Section A, ¶ 73.  Ms. Abubakari also testified that U.A. experienced some distress from not being around other kids in a school setting, but that he never saw any therapists or counselors for this distress.  ECF No. 43-2 at ¶ 74; ECF No. 46-1 at Section A, ¶ 74.

## II.     Legal Standard

---

[2] The family had previously hired a different attorney to "get U.A. the help that he needed in terms of the IEP and the need, whatever the school [was] supposed to do for him that [the family] wasn't able to get them to do . . ."  That attorney was also hired to "contact the school and also to find out if [the Abubakaris could] homeschool with their help . . ."  He did not represent the family during the DCF proceedings.  ECF No. 43-2 at ¶¶ 49-51; ECF No. 46-1 at Section A, ¶¶ 49-51.

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (internal quotation marks and citations omitted). In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## III.   Discussion

### A.  Constitutional Claims

Count One of the Abubakaris' complaint asserts violations of their First and Fourteenth Amendment rights. This Court previously concluded in its decision on Ms. Schenker's motion to dismiss that Count One stated both a First Amendment retaliation claim and a Fourteenth Amendment substantive due process claim. ECF No. 50 at 6-12. The Abubakaris' response to Ms. Schenker's motion for summary judgment makes clear, however, that they are not asserting a First Amendment retaliation claim. Rather, they argue that their First Amendment rights are implicated because "the right of intimate familial association . . . is one which most courts

8

believe lies in the interface between the First Amendment's right of association and the Fourteenth Amendment's right to substantive due process of law."  ECF No. 46 at 12.  This Court concludes, therefore, that to the extent the Abubakaris' complaint alleged a First Amendment retaliation claim, that claim has now been abandoned.  *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").  This Court has already concluded that the facts of this case cannot support a First Amendment intimate association claim.  *See* ECF No. 50 at 8-9 ("The [First Amendment] intimate association cases . . . are factually distinguishable from the case at hand in that the allegations here suggest that Schenker retaliated against the Abubakaris for their own activity, rather than the activity of their family member (i.e., U.A.) . . . . These facts do not suggest that the Abubakaris were retaliated against due to the activities of a family member [as was the case in the First Amendment intimate association cases cited by the Abubakaris in support of their claim].").[3]  Thus, the only remaining claim asserted in Count One is the Fourteenth Amendment substantive due process claim.

Ms. Schenker argues that she is entitled to summary judgment on this claim because (1) the Abubakaris "have failed to show any evidence that their Fourteenth Amendment rights are implicated . . ."; (2) even if those rights are implicated, the Abubakaris have presented no

---

[3] Other district courts within this Circuit have similarly concluded that claims asserting violation of the right of intimate association in the context of a parent-child relationship are properly analyzed under the Fourteenth Amendment rather than the First Amendment.  *See, e.g., Licorish-Davis v. Mitchell*, 2013 WL 2217491, at *6 (S.D.N.Y. May 20, 2013) ("[C]ourts within this Circuit specifically addressing the right to intimate association vis-à-vis parent-child relationships have analyzed the right under the principles of substantive due process rather than the First Amendment.") (collecting cases); *Maco v. Baldwin Union Free School Dist.*, No. 15-cv-3958, 2016 WL 4028274, at *4 (E.D.N.Y. July 26, 2016) (observing that "[i]ntimate association cases brought pursuant to the First Amendment typically arise when a plaintiff's family member exercises their right to free speech, resulting in adverse action being taken against the plaintiff" and concluding that the plaintiff failed to state a claim for interference with her First Amendment right of intimate association because she did not "allege any retaliation for her daughter's exercise of free speech").

evidence that Ms. Schenker deprived them of those rights; and (3) even if Ms. Schenker did

deprive the Abubakaris of their Fourteenth Amendment rights, she is entitled to qualified

immunity.  ECF No. 43-1 at 8-17.  I agree that the Abubakaris have failed to present evidence

from which a reasonable juror could infer that their Fourteenth Amendment substantive due

process rights have been violated and so do not address Ms. Schenker's other arguments

regarding this claim.

"'Choices about marriage, family life, and the upbringing of children' are 'of basic

importance in our society.'"  *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 275 (2d

Cir. 2011) (quoting *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996)).  "The interest of natural parents

'in the care, custody, and management of their child' is a 'fundamental liberty interest protected

by the Fourteenth Amendment.'"  *Id.* (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).

"Family members have, in general terms, a substantive right under the Due Process Clause to

remain together without the coercive interference of the awesome power of the state.  This right

is amplified by the more general substantive due process right of all people to be free of

government action that is arbitrary, conscience-shocking, or oppressive in a constitutional

sense."  *Id.*  (internal alterations, quotation marks, and citations omitted).

The Second Circuit has made clear that the level of interference with the parent-child

relationship at issue in this case is insufficient to support a substantive due process claim. In *Cox*,

a middle school principal reported to the state department of Child and Family Services ("CFS")

that a student had been writing about homicidal and suicidal imagery in his journal while at

school, bringing dangerous objects to school, and expressing suicidal thoughts.  654 F.3d at 271.

The principal further reported that he suspected the student's parents were "failing to provide a

minimal degree of care to their son."  *Id.*  In response, a CFS worker instructed the parents to

meet her at the school and, when they arrived, insisted that they take their son to the hospital immediately to undergo a psychiatric evaluation, warning them that they otherwise could lose custody. *Id.* The parents complied and later brought suit alleging that the principal violated their substantive due process rights by making an exaggerated or false report to CFS resulting in the coerced psychiatric evaluation. *Id.* The Second Circuit affirmed the district court's grant of summary judgment to the defendants, holding that "[w]here there is no actual loss of custody, no substantive due process claim can lie." *Id.* at 276. The Court held that because the "parents maintained custody over [their son] during his entire (concededly coerced) psychiatric evaluation," no reasonable juror could have inferred that their substantive due process rights were violated. *Id.* While it recognized that "[the principal]'s call to CFS and the resulting demands and threats from CFS to the parents may have been stressful or even infuriating," the Second Circuit held that those actions were nonetheless insufficient to support a substantive due process claim. *Id.* at 275.

The facts of this case are analogous to those of *Cox* in that state child protective services became involved in the Abubakaris' and U.A.'s lives in ways that may have been "stressful [and] even infuriating" but the Abubakaris never lost custody of their son. As a result of Ms. Schenker's neglect report to DCF, the Abubakaris had to appear in court on several occasions in connection with the DCF proceedings and to spend money on a lawyer to represent them in that process. ECF No. 43-2 at ¶¶ 64, 75; ECF No. 46-1 at Section A, ¶¶ 64, 75. They experienced "stress" and "fear" regarding the outcome of the DCF process. ECF No. 43-3 at 37; ECF No. 43-4 at 14. But they never lost custody of U.A, even temporarily. ECF No. 43-2 at ¶ 78; ECF No. 46-1 at Section A, ¶ 78. A reasonable juror could not, therefore, infer that their substantive due process rights were violated by Ms. Schenker's report and the proceeding it triggered. *Cox*,

654 F.3d at 276.  This conclusion is supported not only by the *Cox* decision but also by other Second Circuit precedent holding that even instances of deprivation of custody are often insufficient to support a substantive due process claim.  *See, e.g.*, *Southerland v. City of New York*, 680 F.3d 127, 154 (2d Cir. 2012) (removal of children from father's custody for four-day period (before post-removal proceeding was held) was not "shocking, arbitrary, and egregious" and so was not "a denial of substantive due process to [the father]"); *Tanenbaum v. Williams*, 193 F.3d 581, 601 (2d Cir. 1999) (removal of five-year-old child from school for a medical examination that included vaginal and anal swabs for evidence of sexual abuse was not a "wholesale relinquishment of [the parents'] right to raise [the child]" but rather a "temporary separation" that "was not severe enough to constitute a violation of [the parents'] substantive due-process rights").  As a result, I grant summary judgment to Ms. Schenker on this count.

### B.  State Claim

As set forth above, I find that the Abubakaris' federal claim has failed.  28 U.S.C. § 1367 permits federal courts to exercise supplemental jurisdiction over state law claims "in any civil action of which the district courts have original jurisdiction."  Section 1367(c)(3) specifically instructs that district courts "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."  The Second Circuit has counseled that "where . . . federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."  *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

I have granted summary judgment for Ms. Schenker on the Abubakaris' only federal

claim, and no other independent basis for federal court jurisdiction was alleged.  While the

parties have completed discovery, the trial date in this case was only recently set and is more

than nine months from now.  The parties have not yet filed their joint trial memorandum (which

is not due until August 2022), and, to the Court's knowledge, have engaged in no trial

preparation.  Therefore, under § 1367(c)(3), I decline to exercise supplemental jurisdiction over

the Abubakaris' state law claim for intentional infliction of emotional distress and dismiss it

without prejudice to their refiling that claim in state court.

## IV.    Conclusion

For the reasons set forth above, the defendant's motion for summary judgment (ECF No.

43) is GRANTED as to the plaintiffs' constitutional claim (Count 1).  The plaintiffs' state law

claim (Count 2) is DISMISSED without prejudice.  The Clerk is directed to close this case.


IT IS SO ORDERED.

                                                          _____/s/_____
                                                          Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              December 27, 2021

13